```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
UNITED STATES OF AMERICA,
                                              04 Cr. 424 (RWS)
    - against -
                                              MEMORANDUM OPINION
ROBERT UNDERWOOD,

                Defendant.
------------------------------------X
```

**Sweet, D.J.,**

Defendant Rob Underwood ("Underwood") has moved both for the immediate disclosure of <u>Brady</u> and <u>Giglio</u> materials and for the identification of any and all persons named in forty New York Property Clerk's Invoices turned over to defense counsel during discovery. The government has opposed Underwood's motion, which is granted in part and denied in part for the reasons set forth below.

## Prior Proceedings

A grand jury returned the indictment in this action on May 6, 2004, charging Underwood and nineteen co-defendants with conspiring to distribute and to possess with intent to distribute at least one kilogram of heroin from 1999 up to and including May 2004, in violation of 21 U.S.C. § 846.

Underwood, along with his co-defendants and others, is alleged to have been a member of a criminal organization in the Bronx that controlled a three-block strip of Daly Avenue between East 179th Street and Bronx Park South (the "Daly Avenue Organization" or the "Organization") from at least 1999 through May 2004.  According to the indictment, the Organization sold heroin all day and late into the night during the period identified in the indictment, conducting tens of thousands of hand-to-hand heroin transactions.  The Organization is alleged to have sold individual "glassine" bags of heroin, typically stamped with so-called brand names such as "Sean John" and "J. Lo."

According to the indictment, some members of the Daly Avenue Organization acted as "managers," who both sold heroin directly to retail customers and also provided heroin on consignment to "workers" or "pitchers" in the Organization.  Workers and pitchers would then sell the heroin to customers, paying the managers for the heroin as they were able to sell it.  Workers and pitchers in the Organization also acted as "steerers" according to the indictment, directing customers on Daly Avenue to other workers or to managers to complete sales of heroin.

Underwood and his co-defendants are alleged to have committed a number of overt acts in furtherance of the conspiracy, including the sale by Underwood of heroin in the vicinity of Daly Avenue in the Bronx on December 18, 2003.

Underwood, along with many of his co-defendants, was arrested on May 11, 2004. He filed the instant motion on April 8, 2005, and oral argument was heard on April 13, 2005.

**Discussion**

### Immediate Disclosure of *Brady* Material Is Not Required

Underwood seeks the immediate disclosure of exculpatory evidence or material pursuant to Brady v. Maryland, 373 U.S. 83 (1963). Brady and its progeny do not require the immediate disclosure of all exculpatory material upon a defendant's request. Rather, as the Court of Appeals for this Circuit has stated, the government's obligation is to disclose Brady material in sufficient time for the defense to make effective use of it at trial. See United States v. Coppa, 267 F.3d 132, 144 (2d Cir. 2001).

The government has made a good faith representation to the Court and to defense counsel that it recognizes its disclosure obligations under Brady, that currently no Brady material exists, and that it will comply with its Brady obligations in a timely manner should this material become available. The courts of this Circuit repeatedly have denied pretrial requests for discovery orders pursuant to Brady where the government has made such good faith representations. See, e.g., United States v. Rueb, No. 00 Cr. 91 (RWS), 2001 WL 96177, at *6 (S.D.N.Y. Feb. 5, 2001); United States v. Perez, 940 F. Supp.

3

540, 553 (S.D.N.Y. 1996); United States v. Schwimmer, 649 F. Supp. 544, 549 (E.D.N.Y. 1986). Underwood has suggested no reason to believe that the government will not comply with its obligations under Brady; accordingly, the Court accepts the government's representation and therefore no discovery order pursuant to Brady is necessary at this time.

### *Giglio* **Material Must Be Disclosed Two Business Days Before Trial**

Underwood also seeks the immediate disclosure of Giglio material, i.e., Brady material of an impeachment nature. See Giglio v. United States, 405 U.S. 150 (1972). See generally United States v. Bagley, 473 U.S. 667, 676 (1985) (noting that impeachment evidence "falls within the Brady rule"). "In the Second Circuit, Giglio materials, like Brady materials, must be disclosed in time for [their] effective use at trial.'" United States v. Giffen, No. 03 Cr. 404 (WHP), 2004 WL 1475499, at *8 (S.D.N.Y. July 2, 2004) (quoting Coppa, 267 F.3d at 142); see also United States v. Canter, 338 F. Supp. 2d 460, 462 (S.D.N.Y. 2004). The immediate disclosure of Giglio materials merely upon a defendant's request is not required. See Coppa, 267 F.3d at 140. The government has represented to the Court and to defense counsel that it intends to follow the widely accepted practice in this district of producing impeachment material when it provides prior statements of a witness pursuant to 18 U.S.C. § 3500, that is, the Friday before the trial is scheduled to begin, or further

4

in advance of a witness's testimony if additional time is reasonably required to review the material. See, e.g., Canter, 338 F. Supp. 2d at 462 (noting that "[i]t has been the practice of this Court and of other courts in this district to require that the Government produce [impeachment] materials a few days before the start of trial, usually on the Friday before a trial scheduled to start on a Monday") (citing United States v. Santiago, 174 F. Supp. 2d 16, 40-41 (S.D.N.Y. 2001); Perez, 940 F. Supp. at 553).

The Second Circuit held in Coppa that Brady and Giglio material must be disclosed to defense in "sufficient time" for defense to make "effective use" of the disclosed material. Coppa at 144. The Court further elaborates that "the time required for the effective use of a particular item of evidence will depend on the materiality of that evidence . . . as well as the particular circumstances of the case." Id. at 146. In addition, the Court defers to "a trial judge's discretion to order pretrial disclosures as a matter of sound case management." Id.

While the government proposes that disclosure of Giglio material by 5 p.m. on the Friday immediately preceding a Monday morning trial date allows ample opportunity for defense to make effective use of the impeachment material, "[c]learly, information obtained on the eve of trial . . . is less effective to an advocate than information obtained earlier." United States v. Snell, 899 F. Supp. 17, 20 (D. Mass. 1995). See, e.g. United States v. Deutsch, 373 F. Supp. 289, 290

5

(S.D.N.Y. 1974) ("It should be obvious to anyone involved with criminal trials that exculpatory information may come too late if it is only given at trial, and that the effective implementation of Brady v. Maryland must therefore require earlier production in at least some situations."). Exculpatory material, which includes Giglio impeachment information under the Bagley standard, influences every aspect of a defendant's case, including:

> defense investigation, how it will allocate its resources, the voir dire questions the defense will seek, the framing of opening statements, the nature of pretrial research on evidentiary issues and jury instructions, in short, all of the strategic decisions which must be made long in advance of trial.

Snell at 20. See United States v. Washington, 294 F. Supp. 2d 246, 250 (D. Conn. Dec. 15, 2003) (holding that defense counsel's inability to investigate the circumstances of a prior criminal conviction of government's key witness and counsel's consequent inability to incorporate the fruits of such investigation into defendant's trial strategy resulted in prejudice as defense counsel was not able to fully or effectively exploit the impeachment material). See also United States v. Aparo, 221 F. Supp. 2d 359 (E.D.N.Y. June 17, 2002) (directing the government to disclose all exculpatory and impeachment material four weeks prior to trial to allow sufficient time for defendants to make necessary in limine motions, for government to respond to such motions and for court to decide them in a manner promoting sound case management).

The case currently before the Court is a multi-defendant narcotics case, charging a conspiracy to distribute heroin over a five year period. Underwood is alleged to have committed a single overt act, the sale of heroin on a single day, and defense counsel asserts that "no or few" audiotapes or videotapes connect Underwood to the charged conspiracy, an assertion which goes unrebutted by the government. Underwood and several of his co-defendants face trial jointly, and as trial nears the government concedes that there is a possibility that cooperating witnesses may testify. Should such cooperators testify, impeachment information with respect to these government witnesses may prove substantially influential in determining defendant's trial strategy.

Defense counsel must be given sufficient time to investigate and make effective use of such exculpatory information. See United States v. Lino, 2001 WL 8356 (S.D.N.Y. 2000) (noting that the prominent role of government's main cooperating witness in prosecution highlighted the importance of impeachment material and thus warranted early disclosure of Giglio material). As defense counsel cannot be expected to investigate impeachment material effectively and thoroughly if given only the Saturday and Sunday before trial begins (which is the result if the government is permitted to disclose Giglio material by 5 p.m. on the Friday before trial starts), additional time will be granted. Therefore, the government will disclose all Giglio material two business days before the commencement of this trial (i.e., no later

than the close of business on the Wednesday prior to the Monday on which trial is scheduled to begin).

### **Disclosure of Identities of Defendants Implicated In Property Clerk's Invoices Is Not Necessary At This Time**

Underwood acknowledges that the government has disclosed in discovery approximately 40 New York Property Clerk's Invoices reflecting undercover drug purchases. However, these invoices do not include the specific identities of the defendants allegedly involved in each of these recorded transactions. Instead, only the date and time of the alleged transactions are reflected in the invoices, and thus only this limited information has been made available to the defendants, including Underwood.

Underwood argues that the Court should order immediate disclosure of the identities of the defendants implicated in these invoices, asserting that the absence of such information infringes on his ability to develop an alibi defense. However, Underwood can assemble an alibi defense with the information already revealed in the invoices, namely the times and dates of the alleged transactions. Underwood does not need to know the specific identities of the individuals implicated by the invoices in order to ascertain whether he was present or involved in those particular narcotics sales. Accordingly, immediate disclosure of the identities of those persons implicated by the invoices is denied.

**Conclusion**

For the reasons set forth above, Underwood's motion is denied in part and granted in part.

It is so ordered.

New York, NY
April 21, 2005

_____
ROBERT W. SWEET
U.S.D.J.